The R. C. DURR COMPANY, INC. and Maryland Casualty Company, Appellants,

v.

BENNETT INDUSTRIES, INC., Appellee.

Court of Appeals of Kentucky.

Aug. 3, 1979.

Rehearing Denied Sept. 21, 1979.

T. J. Brandt, W. L. Ziegler, Ziegler & Schneider, Covington, for appellants.

Buckner Hinkle, Jr., Ted J. Campbell, Lexington, William H. Baughman, Jr., Cleveland, Ohio, William A. Young, Frankfort, for appellee.

Before HOWARD, VANCE and WINTERSHEIMER, JJ.

VANCE, Judge.

Summary judgment was entered against appellants on the claim of appellee, and appellants' counterclaim was dismissed.

Appellant, The R. C. Durr Company, Inc., was awarded a contract by the Department of Transportation for construction of a section of Interstate Highway 275. The job included the construction of two overpasses.

Prior to submission of its bid, R. D. Crist of the Durr Company met with Brad Mills of Bennett. Durr alleges that these representatives reached an oral agreement whereby Bennett would furnish a specific quantity of fabricated steel to be used in the overpasses for a specific price to be delivered at a specific time. The agreement was dependent upon Durr winning the contract from the State.

Durr was awarded the contract on April 17, 1973. On April 20th, it received from Bennett a written offer to supply the steel at the previously agreed upon price for delivery in the third and fourth quarters, 1973.

The written offer was contained on a one-page document and was signed by Brad Mills for Bennett. The document contained a space for acceptance which was signed by R. D. Crist for Durr, and it was returned to Bennett. There was one change made by Durr. Where Bennett had provided for delivery during the third and fourth quarters of 1973, Durr requested delivery "Soon as possible Sta. 10 + 44 – 1st . . ."

Underneath the lines for signatures of the offeror and offeree was a printed slogan which read "Heavy Steel Fabrication Since 1903." Below the slogan there was reproduced across the bottom of the page three symbols or trademarks which Bennett apparently associated with its business. At the very bottom of the page, below the symbols, was the following: "This quotation is subject to the terms and conditions on the reverse side hereof."

The reverse side of the page was completely filled with twenty numbered paragraphs of conditions. Important to this litigation were clauses which completely exonerated Bennett from liability for liquidated damages and consequential damages. Durr contends that no reference was made to any of the limiting conditions when it was negotiating with Bennett prior to the submission of the bid to the Department of Transportation.

Durr alleges that Bennett did not submit its shop drawing for approval by the State until December, 1973; that significant flaws in the fabrication were found by inspection for the State; that holes were drilled too close to the edge of all girders; that Durr was caused to expend $33,000.00 to correct errors in the fabricated steel supplied by Bennett; that construction was delayed through the defalcation of Bennett causing Durr potential liability for liquidated damages and increased costs of construction.

Durr refused to pay for the steel, and Bennett instituted action to recover the price per contract. Durr claimed a right to deduct from the purchase price the amount it spent to bring the steel up to specifications and counterclaimed for damage caused to it by the failure of Bennett to perform the contract.

The summary judgment does not indicate the basis upon which it was granted. Durr contends there were significant and genuine issues of material facts including the amounts it expended for repairs and the amount of its damages caused by Bennett's failure to perform.

Bennett defends the summary judgment relying primarily upon the exculpatory language in the conditions on the reverse side of the printed offer. It contends that the damages sought by Durr are consequential damages and that the contract precludes liability for consequential damages.

Durr contends the conditions on the reverse side of the offer are not part of the contract because (1) the contract was not signed at the end or close of the writing, and (2) the disclaimer or limitation of liability was not conspicuous.

We find merit in appellants' contentions. KRS 446.060(1) provides:

When the law requires any writing to be signed by a party thereto, it shall not be deemed to be signed unless the signature is subscribed at the end or close of the writing.

The reason for this requirement is that a signature so placed raises the logical inference that the document expresses all which the signer desires to authenticate and to which he intends to be bound. *Gentry's Guardian v. Gentry*, 219 Ky. 569, 293 S.W. 1094 (1927). A signature in the middle of a writing gives no such assurance and gives no indication of an intent to be bound by matters which do not appear above the signature. In *Gentry*, a signature below the acknowledgment to a deed was held valid, and in *Lucas v. Brown*, 187 Ky. 502, 219 S.W. 796 (1920), a signature under the attestation clause of a will was upheld. In

both cases the signature was said to be sufficiently near the close of the instrument, and in both of them the entire instrument appeared above the signature. That is not the case here. The signatures are not near the close of the instrument, and the company slogan, the symbols, the reference to conditions on the reverse side, and all of the limiting conditions appeared below the signature.

█ Bennett contends that the Uniform Commercial Code has negated the application of KRS 446.060(1). The definition of "signed" contained in the Uniform Commercial Code relates to what constitutes a valid signature, not to where the signature must be placed.

█ Laws existing when the Uniform Commercial Code was adopted are supplemental to the Uniform Commercial Code unless displaced by it. KRS 355.1–103. We hold that KRS 446.060(1) was not displaced by the Uniform Commercial Code. It is therefore supplemental to the Code.

█ Because the instrument was not signed at the end, Durr cannot be bound by the limitations of liability contained on the reverse side. Because Durr is not bound by those limitations of liability, the summary judgment for Bennett was improper.

This disposition makes it unnecessary to consider the other allegations of error raised by appellants.

The judgment is reversed.

All concur.